IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs December 9, 2025

**KEVIN DEWAYNE STINNETT v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Marshall County**
**No. 2020-CR-101    M. Wyatt Burk, Judge**

_____

**No. M2024-01897-CCA-R3-PC**

_____

The Petitioner, Kevin Dewayne Stinnett, appeals from the Marshall County Circuit Court's denial of his petition for post-conviction relief. The Petitioner is serving an effective eighteen-year sentence following his jury trial convictions for multiple drug-related offenses. On appeal, he contends that the post-conviction court erred in denying relief on his ineffective assistance of counsel claims related to trial counsel's failures to: (1) move for a dismissal for one count of the indictment, (2) object to the State's introduction of evidence, and (3) request a jury instruction. We affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., and J. ROSS DYER, JJ., joined.

Donna Hargrove, District Public Defender; Raven Prean-Morris (on appeal), Assistant Public Defender – Appellate Division; and William J. Harold, Assistant District Public Defender, for the appellant, Kevin Dewayne Stinnett.

Jonathan Skrmetti, Attorney General and Reporter; G. Kirby May, Assistant Attorney General; Robert J. Carter, District Attorney General; and William Bottoms, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The Petitioner's convictions relate to evidence obtained during the execution of a search warrant of his home, the Petitioner's subsequent statement to law enforcement, and the Petitioner's text and Facebook messages. During the search of the Petitioner's home,

[O]fficers found a "small black box" containing what appeared to be marijuana residue and some syringes on the coffee table in the living room as well as a "straw with residue" on the living room floor. They also found "rolling papers" and aluminum foil with "a white crystalline substance" on top in the living room. Inside a lockbox underneath the coffee table, officers found digital scales, "plastic baggies," "a green plant material" that appeared to be marijuana in a Ziploc bag, a brown piece of paper containing white powder, and numerous multicolored pills that appeared to be "ecstasy." Agent Shane George, who assisted in executing this search warrant, testified that digital scales and plastic baggies "typically are possessed and employed by drug distributors" to weigh and package small amounts of drugs for resale. He also stated that he was able to identify the "green plant material" by smell as marijuana. All of this evidence was located on or near the coffee table next to where [the Petitioner] was sitting on the couch. The lockbox, where the majority of the drugs were located, "was positioned right next to where [the Petitioner] was [sitting] in the house" and the keys to the lockbox were "sitting next to [the Petitioner]." Officers also found a glass pipe, a "glass bong," and a "marijuana grinder" in the back bedroom that had both male and female clothing in it. Officers also uncovered a Motorola cell phone as well as $400 in [the Petitioner's] wallet.

*See State v. Kevin Dewayne Stinnett*, No. M2021-01266-CCA-R3-CD, 2022 WL 17684087, at *1 (Tenn. Crim. App. Dec. 15, 2022).

The Petitioner gave a recorded statement to the officers at the scene, which was played at his trial. In it, the Petitioner admitted that he was a daily marijuana user. He denied ecstasy and heroin use and said he had not used methamphetamine recently. He said the drugs in the lockbox belonged to Stephanie Lee, who had lived at the house until a couple of days earlier, when the Petitioner's mother had made Ms. Lee leave. The Petitioner told the officers that he had the key to the lock box because he helped Ms. Lee sell the drugs. He identified Ms. Lee's dealer and said he went with Ms. Lee to her dealer's home three times. *Id.* at *2.

The text messages and Facebook messages admitted at the trial generally contained discussion between Ms. Lee and the Petitioner about selling and using drugs together and between "West Hill" and the Petitioner about drug pricing, the Petitioner's buying drugs from West Hill, and the Petitioner's selling drugs with Ms. Lee. The Petitioner also discussed Ms. Lee's trying to get the keys to his lockbox. *Id.* at *2-3.

- 2 -

At the close of the State's proof, the trial court granted the defense's motion for judgment of acquittal for Count 1of the indictment, charging possession of heroin pills with the intent to sell or deliver. At the conclusion of the proof, the jury found the Petitioner guilty of possession of heroin with the intent to sell or deliver (Count 2), possession of 0.5 gram or more of cocaine with the intent to sell or deliver (Count 3), possession of less than 0.5 gram of methamphetamine (Count 4), misdemeanor possession of marijuana (Count 5), and possession of drug paraphernalia (Count 6). The trial court imposed partially consecutive sentencing, resulting in an effective eighteen-year sentence. *See id.* at *1-3.

In the appeal of the convictions, the Petitioner challenged three issues: (1) the sufficiency of the evidence to support the convictions, (2) the trial court's denial of his motion for a continuance, and (3) the denial of alternative sentencing and the imposition of partially consecutive sentences. This court affirmed. *See id.*

The Petitioner filed a timely, pro se post-conviction petition. Counsel was appointed, who amended the petition. As relevant to this appeal, the Petitioner alleged that he received the ineffective assistance of counsel because: (1) counsel failed to move for the dismissal of Count 1 at the beginning of the trial and to object to the State's evidence of unidentified pills, which were the subject of Count 1, (2) counsel did not object to the introduction of the search warrant as an exhibit, which included prejudicial information in its statement of facts, (3) counsel did not object to the introduction of the Petitioner's Facebook and text messages about purported drug transactions with people who were not involved in the case, and (4) counsel did not request a limiting instruction that the jury could not use proof of other crimes to infer the Petitioner's guilt of the present charges.

At the post-conviction hearing, transcripts of the trial and post-trial proceedings were received as exhibits. The search warrant and "chemistry report," both of which had been trial exhibits, were received as hearing exhibits. The trial transcript reflects that, at the beginning of the trial, the State acknowledged on the record that the pills which were the subject of Count 1 had not been tested and that the State had no proof to show their composition. Trial counsel responded, "I would move to dismiss unless the State feels like between now and tomorrow they'll be able to fix those problems. It seems like a dismissal now would be the appropriate thing. I think it's up to the State. If the State feels like they can fix it between now and tomorrow, then perhaps the motion would be untimely." The court ruled that it would address the issue "at the appropriate time" at the close of the State's proof. The trial transcript reflects that the court granted the Petitioner's motion for judgment of acquittal as to Count 1 and that the court instructed the jury at the close of the proof that it had dismissed Count 1 and that the jury "should not speculate as to the reason for the removal of this charge or as to the absence of instructions on the charge."

- 3 -

The Petitioner testified that he received a pretrial, ten-year plea offer but that he had no transportation to trial counsel's office to discuss its terms. He said counsel called him and advised him of the ten-year offer "a couple of days before court." He said he had "[n]ot completely" understood the offer's terms and the consequences of declining it and that he would have "signed that day" if he had understood the offer. He said he "couldn't get to [counsel's] office to deal with the plea" and had not understood "[w]hy couldn't this be done in court" when the Petitioner would have transportation. He said that he did not have a court date between the plea offer and the trial date and that he decided to go to trial but later acknowledged that he had more than one court date for his case. He acknowledged that his "case began in 2020" during the COVID-19 pandemic and that this made "coming to court frequently difficult." He said he ultimately received an eighteen-year sentence with 30% release eligibility.

The Petitioner testified that he did not recall telling trial counsel that he would accept a plea but did not want to serve jail time. He acknowledged that he had prior felony convictions but said counsel never discussed that they might be used against him at a trial. He said that he never told counsel what his desired resolution of the case was and that he never told counsel to make a counteroffer to the ten-year offer.

Trial counsel testified that he and the Petitioner discussed "pleas" three or four times. He recalled that he had difficulty getting the Petitioner to come to his office and that the Petitioner's girlfriend brought the Petitioner to counsel's office once. Counsel said he wanted the Petitioner to take the plea offer because counsel "didn't think we had a case that we needed to try." Counsel thought that the ten-year offer had involved split confinement, which counsel thought was generous in view of the Petitioner's criminal history. Counsel recalled that the Petitioner stated that he would agree to a ten-year sentence but that he would not agree to serve jail time. Counsel said the prosecutor would not agree to a sentence that did not involve some confinement.

Trial counsel testified that he did not recall if the State had Tennessee Bureau of Investigation (TBI) laboratory results for all the items they sent for testing. After reviewing the trial transcript, he stated that the "heroin pills" which were the subject of Count 1 of the indictment were submitted for testing but were not tested. He agreed that the State agreed to dismiss Count 1 and that he "moved to dismiss . . . but . . . did leave it open for [the State] to try to fix the problems." He said the charges were not dismissed at the time but were dismissed later.

Trial counsel agreed that a State's witness testified at the trial about the drugs found in the Petitioner's home, which included "ecstasy tablets." He agreed that the witness testified that the tablets might contain a mixture of MDMA, methamphetamine, heroin, and fentanyl. Counsel did not think the tablets were tested for their composition and

- 4 -

acknowledged that he did not object to the witness's speculation about the tablets' composition. He agreed that these tablets had been the subject of Count 1, the count that was dismissed at the motion for judgment of acquittal.

Trial counsel acknowledged that the search warrant, in its entirety, was introduced as evidence. He did not think he had objected to its introduction. He agreed that the warrant's affidavit contained statements made by a confidential informant about the source of some pills for which the informant had been arrested. When asked if the informant had testified at the Petitioner's trial, counsel responded, "Not that I recall." He acknowledged that the affidavit alleged the Petitioner had conducted "multiple sales" that were not part of the charged conduct.

Trial counsel agreed that twenty-six pages of text messages between the Petitioner and Ms. Lee, which referenced "other agreements or deals or sales" were introduced as trial evidence. He agreed that evidence of text messages between the Petitioner and West Hill about a "deal" was introduced without objection. He said he did not request a limiting instruction about evidence of other crimes. He explained that the Petitioner wanted to testify, even though counsel did not think it was a good idea, and counsel "assumed . . . he'd be crossed on all of it." Counsel acknowledged that the Petitioner, ultimately, did not testify because he did not appear for the second day of the trial.

Trial counsel testified that the Petitioner had cooperated with law enforcement at the beginning of the case, before counsel was involved. Counsel said that the Petitioner had tried to "broker a deal where he would work for" the State but that it had not worked out, with the result being that "law enforcement wasn't very happy with the whole situation."

Trial counsel testified that he represented the Petitioner for seven or eight months and that they had about six to ten discussions about the case. Counsel said they met two or three times at counsel's office and two or three times at court appearances. Counsel said that they discussed the facts of the case and that they discussed the plea offer "[a] lot." Counsel agreed that they discussed, as part of the plea discussions, the effect the Petitioner's prior criminal history would have had if he elected to go to trial and to testify.

Trial counsel testified that the Petitioner contacted him around 8:00 or 9:00 on the night of the first day of the trial about having gone to the emergency room for pain. Counsel agreed that he raised the Petitioner's absence with the trial court the next morning. Counsel agreed that the information in the search warrant affidavit and the text messages "would help show the intent of [the Petitioner] in – his involvement with these narcotics and what his intent would be to do with them." Counsel agreed that his trial strategy "from the start" had been based upon the Petitioner's taking the stand. Counsel said that he had

anticipated the Petitioner would testify that the drugs recovered from the Petitioner's home belonged to a woman whose name was in "some of the materials." Counsel said he had concerns about the viability of the Petitioner's testimony but "that's what I had."

At the conclusion of the hearing, the post-conviction court found that the Petitioner's testimony was not credible and that trial counsel's testimony was credible on all factual issues. The court found that the Petitioner had not established ineffective assistance of counsel under the standard of *Strickland v. Washington.* Specifically, the judge found, "I do not believe today, that the results of the trial would have been different" and that "there was overwhelming evidence in this matter to convict" the Petitioner. In its written order, the court elaborated further:

> In the case sub judice, the Court holds that Counsel's conduct fell within the wide range of professional assistance and certainly did not fall below an objective standard of reasonableness. Further, the Court finds that even if Trial Counsel's performance was slightly below an objective standard of reasonable performance, in one or more areas, the outcome of the proceedings would not have changed.

Thus, the post-conviction court denied relief. This appeal followed.

Post-conviction relief is available "when the conviction or sentence is void or voidable because of the abridgement of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103 (2025). A petitioner has the burden of proving his factual allegations by clear and convincing evidence. *Id.* § 40-30-110(f) (2025). A post-conviction court's findings of fact are binding on appeal, and this court must defer to them "unless the evidence in the record preponderates against those findings." *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997); *see Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). A post-conviction court's application of law to its factual findings is subject to a de novo standard of review without a presumption of correctness. *Fields*, 40 S.W.3d at 457-58.

To establish a post-conviction claim of the ineffective assistance of counsel in violation of the Sixth Amendment, a petitioner has the burden of proving that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see Lockhart v. Fretwell*, 506 U.S. 364, 368-72 (1993). The Tennessee Supreme Court has applied the *Strickland* standard to an accused's right to counsel under article I, section 9 of the Tennessee Constitution. *See State v. Melson*, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

- 6 -

A petitioner must satisfy both prongs of the *Strickland* test in order to prevail in an ineffective assistance of counsel claim. *Henley*, 960 S.W.2d at 580. "[F]ailure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). To establish the performance prong, a petitioner must show that "the advice given, or the services rendered . . . are [not] within the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975); *see Strickland*, 466 U.S. at 690. The post-conviction court must determine if these acts or omissions, viewed in light of all of the circumstances, fell "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. A petitioner "is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy by his counsel, and cannot criticize a sound, but unsuccessful, tactical decision." *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994); *see Pylant v. State*, 263 S.W.3d 854, 874 (Tenn. 2008). This deference, however, only applies "if the choices are informed ones based upon adequate preparation." *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992). To establish the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

# I

## Dismissal of Count 1

The Petitioner contends that the post-conviction court erred in denying relief on his claim that trial counsel provided ineffective assistance by failing to move for a dismissal of Count 1 of the indictment at the beginning of the trial. He argues that he was prejudiced by the jury's having heard testimony from three State's witnesses about the unidentified pills that were the subject of the charge in Count 1. The evidence showed that the pills were not tested to determine their composition. The State counters that the court did not err in denying relief on this claim because the Petitioner failed to prove that he was prejudiced, given the court's dismissal of Count 1 in response to the Petitioner's motion for judgment of acquittal. We agree with the State.

In its written order, the post-conviction court made the following relevant findings:

> At the close of the proof, Trial Counsel was successful in arguing a dismissal of Count 1. The jury was instructed that this charge had been removed from their consideration. Further, the jury was instructed that "no further instructions concerning this charge will be provided, and you should

not speculate as to the reason for the removal of this charge or as to the absence of the instructions on this charge."

Furthermore, the evidence at the Evidentiary Hearing failed to state or show any proof that the testimony regarding the pills in Count 1 prejudiced [the Petitioner] and that absent testimony surrounding Count 1 could have changed the outcome of the jury's verdict on Counts 2-6. The proof and testimony at trial was overwhelmingly convincing that [the Petitioner] possessed the other controlled substances with the intent to sell or deliver.

The record reflects that the State acknowledged, at the beginning of the trial, that it had no forensic evidence to support Count 1. Trial counsel, perhaps equivocally, moved for a dismissal, and the trial court deferred its ruling until after the close of the State's proof. The jury heard evidence of the pills' existence, which the Petitioner argues could have allowed them to "infer that the 18 unidentified pills contained heroin based on circumstantial proof alone." However, the jury was instructed that Count 1 had been dismissed and that they were not to consider the reason for the dismissal. The jury is presumed to follow the court's instructions. *State v. Williams*, 977 S.W.2d 101, 106 (Tenn. 1998). Further, as the State correctly notes, the identity of a controlled substance may be proven by evidence other than forensic testing results. *See, e.g.*, *State v. White*, 269 S.W.3d 903, 907 (Tenn. 2008).

The Petitioner argues that, because Count 1 was not dismissed at the beginning of the trial, the jury heard so-called "other crimes" evidence, which was subject to exclusion under Tennessee Rule of Evidence 404(b). Therefore, the Petitioner reasons, he was unfairly prejudiced when the jury considered the question of his guilt of the remaining counts. The weakness of the Petitioner's argument in this regard is the overwhelming proof of his guilt. Several drugs were found near him and inside a lockbox to which he possessed the key. He admitted that he sold drugs with Ms. Lee and that he traveled with her to her supplier's home. His text messages and Facebook messages corroborated his inculpatory statement to police.

The record does not preponderate against the post-conviction court's findings that trial counsel did not perform deficiently and that the Petitioner did not establish prejudice from the alleged deficient performance. Trial counsel moved for a dismissal of Count 1 at the beginning of the trial but acknowledged, consistent with the law, that the State might be able to prove Count 1 despite the lack of forensic proof. The trial court declined to rule until the close of the State's proof. The jury heard evidence about the pills that were the subject of Count 1, and the court ultimately granted the defense's motion for judgment of acquittal on Count 1. The jury was instructed to disregard Count 1 from its consideration,

and the proof as to the remaining counts was overwhelming.  The post-conviction court did not err in denying relief on this issue.

## II

## Lack of Objections to Evidence

The Petitioner contends that the post-conviction court erred in denying relief on his ineffective assistance of counsel claims related to counsel's failure to object to the introduction of the search warrant, with its affidavit containing factual statements about other crimes, and to the text and Facebook messages containing other crimes evidence.  He argues that counsel should have objected on the basis that the evidence was inadmissible under Tennessee Rules of Evidence 801, 403, and 404(b), related to exclusion for hearsay, danger of unfair prejudice, and evidence of prior bad acts.  The State responds that the court did not err in denying relief because the Petitioner failed to prove his claims by clear and convincing evidence.  We agree with the State.

Trial counsel explained at the post-conviction hearing that his trial strategy was premised upon the Petitioner's desire to testify, even though counsel thought it was not a good idea.  Counsel acknowledged that the State had a strong case against the Petitioner.  Counsel knew that the Petitioner would be subject to cross-examination about his alleged drug-related activity, including the activities which were described in the search warrant affidavit and in the text and Facebook messages.  When these evidentiary items were admitted during the State's case-in-chief, counsel did not object, believing that the Petitioner was going to testify in his defense.  However, the Petitioner elected not to appear for the second day of trial, after the evidence in question had been admitted, and he was unavailable to testify in his defense, given his absence.  Moreover, the search warrant and text and Facebook messages had already been admitted, and counsel's opportunities to lodge contemporaneous objections had lapsed once the Petitioner chose to absent himself from the proceedings and forego his right to testify.

The post-conviction court found that the Petitioner failed to prove that trial counsel's performance was deficient and that he was prejudiced by the alleged deficient performance.  Counsel articulated a reasonable, strategic decision, based upon the Petitioner's desire to testify at his trial, not to object to evidence about which the Petitioner would be subject to cross-examination.  The Petitioner thwarted his own defense strategy by failing to appear for the second day of the trial to testify, and by this point, counsel had lost the opportunity to object to the admission of the evidence in question.  No evidence suggests that counsel could have known that the Petitioner's attendance at the trial was in doubt and should have formulated a different trial strategy that involved objecting to the

admission of the evidence at the time it was offered. The record does not preponderate against the post-conviction court's findings regarding deficient performance.

With regard to prejudice, as we noted previously, the evidence of the Petitioner's guilt was overwhelming. He was found in possession of multiple drugs and drug paraphernalia. He inculpated himself in the statement he gave the police at the scene. Additional evidence of his drug activities, aside from those related to the present case, was not prejudicial in the face of the State's proof of his guilt of the present charges. In reaching this conclusion, we have considered the Petitioner's assertion in his reply brief that the trial court did not give a limiting instruction as to the use of the disputed evidence. Although the Petitioner is correct, our focus remains on the overwhelming strength of the State's proof, aside from this evidence.

Because the Petitioner failed to prove this claim, the post-conviction court did not err in denying relief on this basis.

## III

### Failure to Request a Limiting Instruction

The Petitioner contends that the post-conviction court erred in denying relief on his claim that trial counsel provided ineffective assistance by failing to request a limiting instruction on prior bad act evidence. The State responds that the court did not err, and we agree.

This claim is, again, related to the admission of the search warrant and the text and Facebook messages, all of which contained broader evidence of the Petitioner's drug-related activities. The record reflects that, before giving the jury its final instructions, the trial court listed a series of instructions and stated its intention not to give the pattern instruction related to "[e]vidence from other crimes." Trial counsel did not object, which the Petitioner claims was deficient performance.

Regarding the limiting instruction that the Petitioner alleged trial counsel should have requested, the post-conviction court found that the other crimes evidence was probative of the Petitioner's intent in possessing the drugs. The court found that trial counsel's strategy "was completely gutted whenever [the Petitioner] chose not to come back for day two [of the trial]. That left [counsel] hampered and left him unable to move forward with his strategy to rebut any of those text messages and/or rebut the affidavit in support of the search warrant by his client not showing up."

We acknowledge that, in the wake of the Petitioner's decision to abandon the second day of his trial and to forego his opportunity to testify in his defense, trial counsel could have requested a limiting instruction as to the evidence of the Petitioner's other bad acts, given that the Petitioner was not present to testify in accord with the original trial strategy. However, the post-conviction court found that the Petitioner was not prejudiced, and the record does not preponderate against its determination. The proof of the Petitioner's guilt of the charged offenses was overwhelming. Additional proof of his other drug-related activities was inconsequential to the State's evidence of his guilt. The post-conviction court did not err in denying relief on this basis.

In consideration of the foregoing and the record as a whole, the judgment of the post-conviction court is affirmed.

**s/Robert H. Montgomery, Jr.**
ROBERT H. MONTGOMERY, JR., JUDGE